UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FELIPE F. VIVAR,

                           Plaintiff,

—against—

CITY OF NEW YORK, et al.,

                           Defendants

Case No. 18-cv-05987-VSB

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE NEW YORK AND PRESBYTERIAN HOSPITAL AND NEW YORK GRACIE SQUARE HOSPITAL DEFENDANTS' MOTION TO DISMISS

    Mr. Vivar requests that the Court deny the Defendants' motions to dismiss because: 1) even if the Court dismisses the federal law claims against these specific defendants, the Court has supplemental jurisdiction over Plaintiff's state law claims against these defendants; and 2) Plaintiff has adequately alleged several state law claims in his amended complaint.

    In construing Plaintiff's response, Plaintiff asks that the Court read any new additional facts asserted in this opposition brief as supplementing his amended complaint as the Court must do with pro se litigants. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (overturning the district court's grant of dismissal where the complaint and opposition papers to a motion to dismiss when combined stated a claim upon which relief could be granted).

    In the alternative, Mr. Vivar requests that the Court grant him leave to amend his complaint to address any deficiencies identified by the Court. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). ("Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim. A pro se complaint should not be dismissed without the Court granting leave to amend at

least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation marks and citation omitted).

## FACTS

The relevant facts are stated in the amended complaint, and Plaintiff refrains from unnecessarily re-stating those facts here.

## PROCEDURAL HISTORY

On November 7, 2019, Plaintiff filed an amended complaint against approximately four corporate entities and some of their employees. The corporate entities were: Selfhelp Community Services ("Selfhelp"), the City of New York ("the City"), New York and Presbyterian Hospital ("NYPH") s/h/a "New York Presbyterian Hospital", and New York Gracie Square Hospital ("GSH") s/h/a "New York Presbyterian Hospital: Gracie Square Hospital". Some of the employees were named by Plaintiff and others were identified as John/Jane Does.

On November 28, 2019, the Court ordered service for the named defendants, ordered that the City of New York identify its John Doe employees, and stated that Plaintiff could amend the complaint to name other John Doe paramedics and hospital employees if he learned their identities through discovery. Order of Service, Vivar v. City of New York, et al, 18-cv-05987-VSB (November 18, 2018).

The City and its employees have not yet responded to the complaint, but the Court has indicated it is unlikely to grant further extensions beyond May 13, 2019. Order on Motion for Extension of Time to Answer, Vivar v. City of New York, et al, 18-cv-05987-VSB (April 9, 2019).

On February 15, 2019, NYPH moved to dismiss the complaint. NYPH did not move to dismiss the amended complaint on behalf of any of its John/Jane Doe employees, and Plaintiff

did not identify any of its employees by name in the Complaint.

On February 25, 2019 GSH and its named employee, Rebecca Kostopoulos s/h/a "Dr. Rebecca Katsopoulous" moved to dismiss the amended complaint. GSH did not move to dismiss the amended complaint on behalf of any of its John/Jane Doe employees.

Selfhelp and its named employees initially filed an answer in response to the complaint, but after the NYPH and GSH Defendants filed their motions to dismiss, they filed an untimely motion to dismiss. Plaintiff does not respond to Selfhelp's untimely motion in this brief. He plans to respond separately.

## ARGUMENT

### I. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS BECAUSE THEY FORM PART OF THE SAME CASE OR CONTROVERSY AS FEDERAL CLAIMS BEFORE THE COURT

Pursuant to 28 U.S.C. § 1367 (a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Chalusian v. Simsmetal E. LLC*, 698 F.Supp.2d 397, 401 (S.D.N.Y. 2010) (where the state claims would involve similar witnesses, evidence and testimony, court found state claims arose from same underlying factual basis as federal claims).

Here, at this stage, the allegations against NYPH, GSH, and Kostopoulos, form the same case or controversy as Plaintiff's federal law claims against the City and its employees, which the Court plainly has original subject matter jurisdiction over. *Mejia v. Davis*, No. 1:16-CV-9706-GHW, 2018 WL 333829, at *7 (S.D.N.Y. Jan. 8, 2018) (finding supplemental jurisdiction over claims against participants in the chain of events leading to a forced hospitalization); *Mortimer v. City of New York*, No. 15 CIV. 7186 (KPF), 2018 WL 1605982, at *11 (S.D.N.Y. Mar. 29, 2018) (finding supplemental jurisdiction over a private doctor who treated a child forcibly removed from his mother). Defendants do not contest that the Court has original subject matter jurisdiction over the federal law claims against the City and its employees.

At its core, the amended complaint alleges that City and Selfhelp employees retaliated against Plaintiff on two separate instances by calling the police to have Plaintiff unlawfully forcibly hospitalized on two separate dates. In both instances, the City and Selfhelp employees initiated an unbroken course of unlawful behavior that concluded in Plaintiff being forcibly hospitalized, stripped, subjected to an anal cavity search, and forcibly medicated by NYPH's employees on the first occasion and GSH employees on the second. Neither the City, nor its employees, have moved to dismiss those claims against it.

Moreover, the same individuals who are witnesses to Plaintiff's lack of dangerousness or other basis for forced medication or forced hospitalization in the claims against the City and its employees are witnesses in the claims against NYPH, GSH, and their employees. *Id.* Denying supplemental jurisdiction here would require duplication of discovery, trial, and other proceedings. Unlike Plaintiff, who has relevant case law supporting his position, Defendants do not identify a single case where a court declined to exercise supplemental jurisdiction over those who participated in the chain of acts that resulted in a plaintiff's forced hospitalization.

4

Defendant NYPH appears to argue that because the police officers did not remain at NYPH with Plaintiff during the entirety of his forced hospitalization, there can be no supplemental jurisdiction. NYPH Memorandum of Law p. 8-9. However, this argument is contrary to the cases identified above, ignores the overlap in witnesses, and ignores that the NYPH employees almost certainly used and were told information by the police officers, even after the police officers had left. Defendants do not cite, nor is there, any case law indicating that a party to the federal claim with original jurisdiction must be physically present at the time the specific act constituting the supplemental claim occurs. As explained above, physical presence is not the only way for facts to overlap. For these reasons, the Court should exercise supplemental jurisdiction over Plaintiff's state law claims.

## II. PLAINTIFF HAS ADEQUATELY ALLEGED SEVERAL STATE LAW CLAIMS AGAINST NYPH, GSH, AND KOSTOPOULOS

"The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." C. Wright, A. Miller, M. Kane, R. Marcus, and A. Steinman, 5 Federal Practice and Procedure 1219 (3d ed., 2017 Update); citing Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes or legal theories.") (emphasis in original).

While "[f]ederal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014) (internal quotation and citation omitted) (holding that it was improper for a district court to dismiss a complaint simply because the complaint referred to the

Fourteenth Amendment instead of 42 U.S.C. § 1983). A plaintiff need only simply, concisely, and directly state facts that entitle them to damages from the defendant. *Id.*

While Plaintiff, a *pro se* litigant, did not specifically identify his legal theories entitling him to relief, *Johnson* makes clear that he was not required to. None of the cases cited by Defendants actually address a failure to identify specific legal theories by *pro se* litigants, to the contrary, they all deal with failures to allege sufficient or clear facts in the complaint. Unlike those cases, Plaintiff has clearly stated facts entitling him to relief. Despite Plaintiff's clear statement of facts, NYPH, GSH, and Kostopoulos, feign the inability to determine which state law claims he has advanced. Because Plaintiff is *pro se,* Plaintiff asks that the Court liberally construe his complaint to raise the strongest legal theories that it suggests, and while the Court may identify additional state law claims that Plaintiff has alleged, Plaintiff believes that he has at least alleged the claims outlined below against the moving defendants.

Even if NYPH and GSH is not directly liable for torts against Plaintiff, Plaintiff has adequately alleged that they are liable for the acts of its employees because New York tort law recognizes *respondeat superior*. Cook, David et al., § 9:11.Vicarious liability of employer under respondeat superior, 14 N.Y.Prac., New York Law of Torts § 9:11 (August 2017 Update).

### 1. False Imprisonment Against NYPH and GSH

Plaintiff has adequately alleged false imprisonment because he has adequately alleged that: 1) employees from NYPH and GSH intended to confine plaintiff; 2) Plaintiff was conscious of the confinement; 3) Plaintiff did not consent to the confinement; 4) the confinement was not otherwise privileged. *See Torres v. Jones,* 26 N.Y.3d 742 (2016). While he alleges that NYPH committed this tort on two occasions, he alleges that GSH committed this tort on one occasion.

### 2. Intentional Infliction of Emotional Distress Against NYPH and GSH

Plaintiff has adequately alleged Intentional Infliction of Emotional Distress under New York state law against NYPH and GSH. He has adequately alleged that when NYPH's employees forcibly hospitalized him, forced him to strip, subjected him to an anal cavity search, forcibly medicated him, and/or denied him his inhaler on two occasions, its employees: 1) engaged in extreme or outrageous conduct, 2) directed at Plaintiff, 3) with intent to cause (or recklessly disregarded a probability of causing) several emotional distress, 4) that caused Plaintiff severe emotional distress. *Gilewicz v. Buffalo General Psychiatric Phyciatric (SIC) Unit*, 118 A.D.3d 1298 (N.Y. Sup. App. Div. 4th Dep't 2014).

Similarly, he has adequately alleged that when GSH's employees forcibly hospitalized him, restrained him to a bed, and/or forcibly medicated him multiple times, its employees: 1) engaged in extreme or outrageous conduct, 2) directed at Plaintiff, 3) with intent to cause (or recklessly disregarded a probability of causing) several emotional distress, 4) that caused Plaintiff severe emotional distress. *Id.*

### 3. Negligent Infliction of Emotional Distress Against NYPH and GSH

Plaintiff has adequately alleged Negligent Infliction of Emotional Distress under New York state law against NYPH and GSH. He has adequately alleged that when NYPH's employees forcibly hospitalized him, forced him to strip, subjected him to an anal cavity search, forcibly medicated him, and/or denied him his inhaler on two occasions, its employees: 1) created an unreasonable risk of causing Plaintiff emotional distress, 2) Plaintiff's emotional distress was foreseeable, 3) caused Plaintiff emotional distress, and 4) breached a direct duty of care to Plaintiff which resulted in Plaintiff's being unreasonably placed in fear of physical harm. *See Battalla v. State*, 10 N.Y. 2d 237 (1961).

7

Similarly, he has adequately alleged that when GSH's employees forcibly hospitalized him, restrained him to a bed, and/or forcibly medicated him multiple times, its employees: 1) created an unreasonable risk of causing Plaintiff emotional distress, 2) Plaintiff's emotional distress was foreseeable, 3) caused Plaintiff emotional distress, and 4) breached a direct duty of care to Plaintiff which resulted in Plaintiff's being unreasonably placed in fear of physical harm. *Id.*

### 4. Medical Mal-Practice Against NYPH, GSH, and Kostopoulos

Plaintiff has adequately alleged medical malpractice under New York state law against NYPH, GSH, and Kostopoulos. He has adequately alleged that when NYPH's employees forcibly hospitalized him, forced him to strip, subjected him to an anal cavity search, forcibly medicated him, and/or denied him his inhaler on two occasions, its employees: 1) breached the appropriate duty of care between physicians or nurses and Plaintiff as a patient and 2) caused injury to Plaintiff. *See Bucsko v. Gordon*, 987 N.Y.S.2d 402 (2d Dep't 2014).

Similarly, Plaintiff has adequately alleged that when GSH's employees forcibly hospitalized him, restrained him to a bed, forcibly medicated him multiple times, and/or allowed him to fall, its employees: 1) breached the appropriate duty of care between physicians or nurses and Plaintiff as a patient and 2) caused injury to Plaintiff. *Id.*

Lastly, he has adequately alleged that when Kotsopoulos forcibly medicated him, the doctor 1) breached the appropriate duty of care between physicians or nurses and Plaintiff as a patient and 2) caused injury to Plaintiff. *Id.*

### 5. Battery Against NYPH, GSH, and Kostopoulos

Plaintiff has adequately alleged battery under New York state law against NYPH, GSH, and Kostopoulos. He has adequately alleged that when the NYPH's employees strapped him into

8

a bed and when they forcibly medicated him that: 1) they intended to make bodily contact and 2) it was harmful or offensive in nature. *Merzon v. County of Suffolk*, 767 F.Supp. 432 (E.D.N.Y.1991).

Similarly, he has adequately alleged that when the GSH's employees strapped him into a bed and when they forcibly medicated him that: 1) they intended to make bodily contact and 2) it was harmful or offensive in nature. *Id.*

Lastly, he has adequately alleged that when Kotsopoulos forcibly medicated him that: 1) the doctor intended to make bodily contact and 2) it was harmful or offensive in nature. *Id.*

### 6. Assault Against GSH

Plaintiff has adequately alleged assault under New York state law because he has adequately alleged that when GSH's employees told him that if he didn't take the medication they would physically force him to: 1) they made an unjustifiable threat of force against Plaintiff, 2) with the intention to arouse apprehension, 3) creating Plaintiff's reasonable apprehension of immediate physical harm, and 4) they had the present ability to effectuate the threat. *Merzon v. County of Suffolk*, 767 F.Supp. 432 (E.D.N.Y.1991).

\* \* \*

For all of the reasons discussed above, the Court should exercise supplemental jurisdiction over Plaintiff's state law claims against NYPH, GSH, and Kotsopoulos at this stage and refuse to dismiss those state law claims.

## III. AT THIS STAGE, THE COURT NEED NOT RULE ON WHETHER ANY OF NYPH'S EMPLOYEES WERE STATE ACTORS

Here, NYPH has not moved to dismiss any claims on behalf of any of its specific employees identified in Plaintiff's amended complaint. Moreover, Plaintiff concedes that the

amended complaint does not alleged facts sufficient for corporate liability under 42 U.S.C. §1983 against NYPH. Therefore, the Court may dismiss the federal claims against NYPH, without ruling on whether any of NYPH's employees have been alleged to be state actors under §1983.

## IV. PLAINTIFF CONCEDES THAT THE AMENDED COMPLAINT DOES NOT ADEQUATELY ALLEGE STATE ACTION BY KOSTOPOULOS OR GSH

As with NYPH, Plaintiff concedes that the amended complaint does not alleged facts sufficient for corporate liability under 42 U.S.C. §1983 against GSH. He also concedes that the amended complaint does not allege that Kostopoulos was a state actor under 42 U.S.C. §1983.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the motions to dismiss as to the state law claims against NYPH, GSH, and Kostopoulos.

In the alternative, Plaintiff requests that the Court grant him leave to amend his complaint to address any deficiencies identified by the Court, and any other relief this Court deems just and proper.

Dated: New York, New York
April 18, 2019

*[signature]*
FELIPE F. VIVAR

PAGE 7

MY NAME IS FELIPE VIVAR I AM A DISABLED PERSON I CAN'T BELIEVE I HAVE BEEN MISTREATED BY THE STATE OF NEW YORK HRA, SELFHELP, AND NEW YORK PRESBYTERIAN HOSPITAL, AND GRACIE SQUARE HOSPITAL NEW YORK POLICE DEPARTMENT FIRST INCIDENT JUNE 21ST 2018 POLICE CAME INTO MY HOME I DID NOT GIVE THEM PERMISSION TO COME IN THEY WENT THROU OUT THE HOUSE IN MY BEDROOM LIVING ROOM AND KITCHEN WITH NO SEARCH WARRENT ONE OF THE OFFICERS WAS A DARK SKIN HISPANIC WOMAN SEARGENT I THINK THEY WERE IN MY APARTMENT FOR AN HOUR THE LADY WAS SAYING THIS IS ILLEGAL IN SPANISH I TOLD THEM I WAS BEING HARRASSED BY SELFHELP AND HRA I WAS SLEEPING I NEEDED MY REST I SHOWED MY COMPLAINTS BUT TOOK ME TO PRESBYTERIAN HOSPITAL I HAD PROBLEMS BREATHING THERE WAS NOT ENOUGH AIR IN THE ROOM I HAD TO SLEEP IN A CHAIR FORCED TO GIVE BLOOD AND MEDS I DON'T TAKE PHSCHIATRIC DRUGS THEY TRIED TO FORCE ME TO DO TESTS ON MY BRAIN I WAS CRYING I WANT GO HOME THIS WAS RETALIATION FOR MAKING COMPLAINTS TO HRA, AND SEFHELP 311 CALLS, AND PHONE CALLS TO THE GUARDIAN PROGRAM COURT THE SECON INCIDENT ON AUG 3RD 2018 POLICE CAME TO MY HOME I CALLED 911 DINO DEAS WAS BANGING ON THE DOOR TRYING TO FORCE HIS WAY IN

PAGE 2

I WAS SLEEPING I NEEDED MY REST I PICKED UP MY HOUSE PHONE ITS A CORDED PHONE MY PHONE IS FAR FROM THE DOOR I CALLED THE GUARDIAN PROGRAM COURT I TALKED TO MY FREIND JOHN CRAWFORD COURT CLERK OF SUPREME COURT THAT SELF HELP IS BANGING ON MY DOOR I WAS CRYING TOLD HIM TO SEND SOMEONE FROM THE COURT TO HELP ME HE SAID HE WOULD DO SOMETHING IN JUNE I WROTE TO THE JUDGE LAURA VISITACION LEWIS FOR HELP THAT SELF HELP AND HRA ARE HARRASSING ME BUT SHE DID NOT WRITE ME BACK I ALSO TOLD GUARDIA PROGRAM SUPERVISER SCOTT ZINGER HE WOULD NOT RETURN MY CALLS I HAVE BEEN REPORTING TO THE COURT FOR YEARS ABOUT THE TREATMEN OF SELF HELP AUG 3 I MADE TWO CALLS ONE TO THE COURT AND ONE TO 911 FROM MY HOUSE PHONE THAT SELF HELP IS BANGING ON MY DOOR I DID NOT OPEN THE DOOR TIL THE POLICE CAME TO MY DOOR THE POLICE PULLED ME OUT OF MY APARTMENT WITH NOT SHOES ON GRABBED BY OFFICERS BUNCH OF OFFICERS ON ME CAUSING PAIN IN MY SHOULDERS AND I WAS SEACHED THERE WAS NO WEAPON O DINO TOLD THEM I PULLED A KNIFE I TOLD POLICE I WAS ON THE PHONE THE COURT AND 911 I SHOWED COUR

# PAGE 3

TO POLICE I WAS FORCED TO GO TO THE HOSPITAL MY MIRANDA RIGHTS WERE NOT READ TO ME I AM INOCENT DINO DEAS NEEDS TO BE ARRESTED FOR MAKING A FALSE REPORT TO POLICE I HAVE BEEN TRYING TO REACH OUT TO PEOPLE FOR HELP FOLLOWING THE LAW I HAVE BEEN WITH SELF HELP FOR 18 YEAR WHY THESE THINGS HAPPENING NOW MY OTHER WITNESS OF THE COURT IS JULIE MARCING SUPREME COURT LAYER SHE KNOWS I AM TELLING THE TRUTH ALSO JANIELLA WASHINGTON NURSE OF GRACIE SQUARE IS A WITNESS RIVAS SEARS VALARIE SOTO AND DINO DEAS HAD ME PUT IN THE HOSPITAL REBECCA KOSTOPOLOUS PHSCIATRIST IS A WITNESS THAT I DID NOT OPOLIGIZE ON THE PHOYE TO RIVAS SEARS AND VALARIO SOTO THEY WOULD KEEP ME IN THE HOSPITAL FOREVER I WAS CRYING I WAS CRYING MY WHOLE STAY AT GRACIE SQUARE EVERY 15 MINUTES COMING IN MY ROOM NOT LETTING ME SLEEP I HAD TO TAKE MEDS CHECKING ME IF I & SWALLOWED THEM FEELING SICK VOMITING IN THE BATHROOM AND DIAREHA HEADACHES THEY TOLD ME YOU WANT TO GO HOME YOU HAVE TO TAKE MEDS ALSO

WHEN THE SUPER JOSE VALLE OPENED THE DOOR THERE WAS GRAFFITI ON THE WALL THE SUPER WITNESSED MY THINGS WERE TAKEN FROM THE DRAWERS CLOSETS TV STOLEN BUREAU STOLEN, BOXES IN THE CLOSET TAKEN OPENED MAIL STOLEN BROKEN DOOR FEDEX PACKAGES STOLEN THE SUPER JOSE VALLE TOLD ME HE WOULD COME TO COURT TO BE MY WITNESS ALSO AT GRACIE SQUARE THE VENTALATION NEEDED TO GET FIXED I TOLD STAFF I CANT BREATHE THEY DID NOTHING ABOUT IT I COULD HAVE DIED I HAVE LUNG DISEASE ALSO MY SOCIAL SECURITY CHECK CASE NEEDED RECERTIFICATION THEY TOLD ME THERE WAS AN APPOINTMENT AT SOCIAL SECURITY MY CASE WORKER PHILLIPE ELIK WAS SUPPOSED TO GO THERE I DID NOT HAVE ANY MONEY FOR A WHILE I HAD TO GO AND APPLY FOR EMERGENCY ASSISTANCE AND WAS DENIED SOCIAL SECURITY TOLD ME SELF HELP NO COMPLIAND SELF HELP DIND NOT DO THEIR JOB

# Page 4

RESPERDALL PILLS AND RESPERDAL INJECTIONS LONG ACTING I FELT SICK VOMETING HEADACHES NAUSEA EVEN AFTER I LEFT THE HOSPITAL I HAVE BEEN TRAUMATISED I HAVE SUFFERED PHYSICALLY AND MENTALLY I AM UNABLE TO SLEEP I TOLD MY THERAPIST PAUL FITZGERALD WHAT HAPPEND I HAVE BEEN GOING TO PAIN MANAGEMENT WITH DR. LIEU ALSO MY APARTMENT WAS ROBBED BY SELF HELP THERE WAS DAMAGE DONE TO MY APARTMENT BROKEN BEDROOM DOORS STOLEN TV SUPERMAN COMIC BOOKS WORTH A LOT MONEY MY DADS THING WATCH JEWLRY MY PRIVACY HAS BEEN INVADED SELF HELP WENT THROUG MY DRAWERS AND CLOSETS WITHOUT MY PERMISSION NO ONE WOULD ALLOW THAT I WANT TO DEAL WITH ALL OF THE CLAIMS IN ONE COURT MY FOURTH AMENDMEND RIGHTS WERE VIOLATED ALSO I WAS LOCKED OUT OF MY APARTMENT THE LOCKS WERE CHANGED THE SUPER HAD TO BREAK DOWN THE DOOR TO OPEN THE DOOR IF IT WAS NOT FOR THE SUPER I WOULD HAVE TO SLEEP ON THE STREET ILLEGAL EVICTION BY SELF HELP