UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
:
FELIPE F. VIVAR,                                      :
:
Plaintiff,          :
:
- against -                       :
:
CITY OF NEW YORK, et al.,                             :
:
Defendants.  :
:
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/30/2020

18-CV-5987 (VSB)

**OPINION & ORDER**

Appearances:

Felipe F. Vivar
New York, New York
*Pro se Plaintiff*

Gregory John Radomisli
Martin Clearwater & Bell LLP
New York, New York
*Counsel for Defendant New York Presbyterian Hospital*

Dana Marie Ricci
Christopher Allen McLaughlin
Litchfield Cavo LLP
New York, New York
*Counsel for Defendants Self Help Community Services, Valerie Soto, Rivas Sears, Dino Diaz*

Vincent Leonard Gallo, Jr
Heidell, Pittoni, Murphy & Bach, LLP
White Plains, New York
*Counsel for Defendant New York Gracie Square Hospital and Rebecca Kostopoulos*

Amatullah Khaliha Booth
Office of the Corporation Counsel, NYC Law Department
New York, New York
*Counsel for Defendants City of New York and Angel Bussue*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Pro se Plaintiff Felipe Vivar brings this action against Defendants New York and Presbyterian Hospital s/h/a "New York Presbyterian Hospital" ("NYPH"), New York Gracie Square Hospital, Inc. s/h/a "New York Presbyterian Hospital: Gracie Square Hospital" ("GSH"), Rebecca Kostopoulos s/h/a "Dr. Rebecca Kastopoulos" ("Kostopoulos," and, together with GSH, the "GSH Defendants"), the City of New York (the "City"), Angel Bussue (together with the City, "the City Defendants"), Selfhelp Community Services ("Self Help"), Valerie Soto, Rivas Sears, Dino Diaz (together with Sears and Soto, the "Individual Self Help Defendants," and together with Sears, Soto, and Self Help Community Services, the "Self Help Defendants"), John Doe HRA Employee, John Doe Police Officers #1–18, John Doe Security Guards #1–4 at New York Presbyterian Hospital, John Doe Paramedics #1–2, and John Doe Gracie Square Nurse #1, alleging claims under Title 42 United States Code § 1983 ("§ 1983") along with various state law claims, in connection with two incidents in the summer of 2018, when police officers entered Plaintiff's apartment and transported him to a hospital, where he was temporarily committed. Before me are four (4) motions to dismiss seeking the dismissal of some or all causes of action filed against NYPH; the GSH Defendants; Self Help; and the Individual Self Help Defendants (together, the "Moving Defendants"). For the reasons stated below, the motions are GRANTED IN PART AND DENIED IN PART. The following claims are dismissed: Plaintiff's § 1983 claims against NYPH, GSH, and Kostopolous; Plaintiff's § 1983 claims for violations of the Fourth Amendment against Self Help and Soto; Plaintiff's § 1983 claims for violations of the First Amendment claims against Self Help, Soto, Sears, and Diaz; and Plaintiff's intentional and negligent infliction of emotional distress claims. The Moving Defendants' motions to dismiss are otherwise denied.

# I.    **Background**[1]

Plaintiff, Felipe Vivar, is a "46-year-old male of Latino descent," with a host of physical medical conditions as well as anxiety disorder and unspecified disabilities.  (Am. Compl. ¶¶ 1, 3.)[2]  Since 2001, he has been receiving supportive services, rental assistance, and a bi-weekly subsidy from Self Help, a non-profit organization.  (*Id.* ¶ 4.)  In May 2018, Plaintiff alleges, he visited a Self Help office to pick up a check and was mistreated.  (*Id.* ¶ 6.)  He was prevented from going to the bathroom despite his medical condition, and Defendant Valerie Soto, a Self Help caseworker, called him a "fat faggot," and he was forced to wait for two hours.  (*Id.* ¶¶ 6, 41.)  On May 17, 2018, although Plaintiff had told Self Help and "HRA" (presumably referring to the New York City Human Resources Administration) that he did not want any visitors, an HRA caseworker knocked on Plaintiff's door and asked to come inside.  (*Id.* ¶ 7.)  Plaintiff does not allege the worker actually entered his apartment.  Plaintiff made 311 complaints about these incidents and spoke with Defendant Angel Bussue, who told him to stop filing such complaints or else the police would be called.  (*Id.* ¶¶ 6–8.)

Subsequently, an HRA employee falsely told Self Help that Plaintiff had made threats of violence against Rivas Sears and Dino Diaz, Self Help employees.[3]  (*Id.* ¶ 9.)  Based on this

---

[1] The following factual summary is drawn from the allegations contained in Plaintiff's Complaint (Doc. 2), his Amended Complaint, (Doc. 7), and his submissions in opposition to Defendants' motions, (Docs. 73, 91, 99).  I assume the allegations set forth in these documents to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint, filed November 7, 2018.  (Doc. 7.)  The first eight pages of this document comprise a completed version of the "Amended Complaint" form that is available on the website of the United States District Court Southern District of New York.  Those eight pages are followed by an additional thirteen pages of typed and numbered paragraphs, which contain the bulk of Plaintiff's allegations.  Accordingly, when a fact is contained in the "Amended Complaint" form, I cite to the ECF-generated page number of the Amended Complaint; when a fact is contained in a numbered paragraph, I cite to that paragraph.

[3] The Amended Complaint does not specify either the date of the alleged false statements by the HRA employee or the date Plaintiff allegedly made threats.

information, Self Help called the police and asked them to go to Plaintiff's apartment and take him to the hospital. (*Id.*)

On the morning of June 21, 2018, Plaintiff heard banging at his apartment door. When he went to open it, police officers "rushed in" without a warrant, even though there were no exigent circumstances. (*Id.* ¶ 11.) They did not explain why they were there and searched one of his drawers without permission. (*Id.* ¶ 13.) The officers then informed Plaintiff that they intended to take Plaintiff to the hospital for an evaluation. (*Id.* ¶ 14.) The officers escorted Plaintiff to New York and Presbyterian Hospital by ambulance. (*Id.* ¶ 15.) They did not handcuff Plaintiff, but Plaintiff alleges they made statements threatening do so if he did not cooperate. (*Id.*)

At the hospital, Plaintiff was involuntarily committed. (*Id.* ¶ 17.) Two security guards and two paramedics entered his room and told him to replace his clothes with a hospital gown, conducted an anal cavity search, and then took his belongings. (*Id.* ¶ 19.) Plaintiff was then taken to the psychiatric ward, where he waited four to five hours before he spoke with a doctor. (*Id.* ¶ 18–19.) Four or five hours after that, he was visited by a nurse. (*Id.*) Both the doctor and the nurse asked Plaintiff if he wanted to hurt himself; Plaintiff said no but informed the nurse he could not breathe and asked for an inhaler. (*Id.*) The nurse told Plaintiff that he would not be released if he refused to take certain pills. (*Id.*) Plaintiff took the pills but did not receive any treatment for his difficulty breathing. (*Id.*) Plaintiff was hospitalized for just over 24 hours and released the next day. (*Id.* ¶ 17.)

According to Plaintiff, Sears later told him "you report police that's what you get." (Compl. at 7.)[4] After he was released, Plaintiff called 311 to complain that Sears and Diaz had

---

[4] "Compl." refers to Plaintiff's "Complaint," filed July 2, 2019. (Doc. 2.) The Complaint does not contain

called the police to forcibly take Plaintiff to the hospital. (Am. Compl. ¶ 24.) He also filed his original Complaint in this action on July 2, 2018, soon after being released. (*See* Compl. at 1.)

Subsequently, Diaz left notes at Plaintiff's apartment informing him that Self Help would be coming to visit his apartment on August 3, 2018. (Am. Compl. ¶ 25.) Plaintiff told a Self Help employee he did not want anyone to enter his apartment and the employee agreed to this request. (*Id.*) On August 3, 2018, Diaz arrived at Plaintiff's apartment and informed him that cleaners had come to clean his home. (*Id.* ¶ 28.) Plaintiff called the police and informed them that Diaz was harassing him. (*Id.*) When the police arrived, they rushed in and began searching Plaintiff. (*Id.* ¶¶ 29–30.) Individuals wearing Self Help shirts also entered his apartment, and Diaz falsely alleged to the police that Plaintiff had attempted to use a knife against him. (*Id.* ¶ 30.) The police then forced Plaintiff into an ambulance, which took him to New York-Presbyterian Hospital Gracie Square.[5] (*Id.* ¶¶ 31–32, 36.) Even though Plaintiff told the paramedics he could not breathe and needed his inhaler, this request was ignored. (*Id.* ¶ 31.)

Ultimately, Plaintiff was involuntarily hospitalized for ten days. (*Id.* ¶ 35.) Upon his arrival, Plaintiff waited in his room for several hours, crying and unable to breathe. (*Id.* ¶ 33.) He again requested his inhaler, but this request was denied. (*Id.*) Security guards forced Plaintiff to strip, squat, and then change into a hospital gown. (*Id.*) Plaintiff was physically restrained to a bed with straps. (*Id.*) Defendant Kostopoulos, a psychiatrist, asked Plaintiff if he wanted to hurt himself and he responded that he did not. (*Id.* ¶ 36.) Kostopoulous then ordered that Plaintiff be medicated, without performing an independent evaluation. (*Id.*) Plaintiff

---

numbered paragraphs and so I cite to the ECF-generated page numbers.

[5] Plaintiff refers to this hospital only as "New York-Presbyterian," but later in his Complaint refers to one of the nurses that treated him at this hospital as "John Doe Gracie Square Nurse," (*id.* ¶ 36), and names Gracie Square Hospital as a Defendant, (*id.* at 8). Accordingly, I assume the references in this section of his Amended Complaint are to Defendant New York Gracie Square Hospital.

protested but a nurse injected him with Risperdal. (*Id.*) During this hospitalization, nurses gave Plaintiff pills and told him he would not be released unless he took his medication. (*Id.* ¶¶ 37–38.) One nurse also told Plaintiff if he did not take it, other nurses would come and physically force him to take it. (*Id.* ¶ 38.) The nurse also would check Plaintiff's mouth and/or use his hands to make sure he swallowed the pills. (*Id.* ¶ 39.) Plaintiff alleges that, against his will, he was injected a total of five times over the course of his hospitalization and forced to take pills two to three times a day. (*Id.*) The medication made Plaintiff groggy and unable to stand straight. (*Id.* ¶ 40.) As a result, Plaintiff hit his head on the nightstand in the hospital room, but did not receive medical attention when he asked for it. (*Id.* ¶ 41.)

At one point during Plaintiff's hospitalization, Diaz came to visit him. According to Plaintiff, Diaz yelled at him and demanded he apologize to Sears and Soto, frightening Plaintiff and causing him to cry. (*Id.*) A nurse informed Kostopoulos what had happened, and Diaz was escorted out of the hospital. (*Id.*)

Plaintiff was released on August 14, 2018, but when he returned home, he was unable to enter his apartment. (*Id.* ¶¶ 42, 46.) He believed Self Help had changed the locks on his door. (*Id.* ¶ 46.) After waiting for two hours, Plaintiff called his superintendent, who broke down the door to his apartment. (*Id.*) Inside, Plaintiff found that his apartment was damaged and in disarray, and several of his items were missing. (*Id.*)

## II.   <u>Procedural History</u>

Plaintiff filed his Complaint on July 2, 2018, naming the New York City Police Department, New York Presbyterian Hospital, the Human Resources Administration, and Self Help Community Services, alleging mistreatment by Self Help employees and harm related to his involuntary commitment after having been removed from his apartment on June 21, 2018.

(Doc. 2.)  On the same day, Plaintiff filed a request to proceed in forma pauperis, (Doc. 1), which

was granted on July 25, 2018, (Doc. 3.)

On August 3, 2018, Chief Judge Colleen McMahon issued an Order to Amend, finding

that Plaintiff had failed to provide sufficient facts to state a claim and directing him to file an

amended complaint within sixty (60) days that remedied this deficiency.  (Doc. 4, at 7–8.)  The

Order to Amend warned that failure to amend within the time allotted would result in the

dismissal of the Complaint for failure to state a claim upon which relief could be granted.  (*Id.*)

In her Order, Judge McMahon liberally construed Plaintiff's complaint "to allege

violations of his constitutional rights under 42 U.S.C. § 1983."  (*Id.* at 3.)  She found Plaintiff's

claims against the NYPD and HRA deficient on the basis that "city agencies or departments do

not have the capacity to be sued under New York law."  (*Id.*)  However, she observed that a

plaintiff could name the City of New York as a defendant if he provided facts showing "that the

injuries he suffered arose from a municipal policy, custom, or practice."  (*Id.* at 4.)  Judge

McMahon also found that the claims against Self Help and New York Presbyterian Hospital

were not viable because private parties are generally not liable under § 1983.  (*Id.* (citing, *inter*

*alia*, *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013).)  Finally, Judge McMahon

found that Plaintiff had not alleged facts showing that the Defendants were personally involved

in the alleged constitutional deprivations, which is required to state a claim under § 1983.  (*Id.* at

5 (citing *Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013)).)

Plaintiff requested and received an extension of time to amend his complaint, (Docs. 5–

6.).  On November 7, 2018, Plaintiff filed a request for pro bono counsel, (Doc. 8), and his

Amended Complaint, (Doc. 7).  The Amended Complaint asserted causes of action for violations

of Title 42 United States Code § 1983, the Fourteenth Amendment, the Fourth Amendment, and

the First Amendment, along with "pendent state claims." Plaintiff named as Defendants the City of New York, Angel Bussue, Dino Diaz, Valerie Soto, Rivas Sears, NYPH, GSH, and Kostopoulous. (Am. Compl. 1.) He also asserted claims against the following John Doe defendants: John Doe HRA employee #1, John Doe police officers 1–18, John Doe security guards 1–4, John Doe paramedics 1–2, and John Doe Gracie Square nurse #1.

On November 28, 2018, I entered an Order of Service directing the Clerk of Court to deliver to the United States Marshals Service all documents necessary to effect service on Defendants. (Doc. 10.) I also directed the New York City Law Department to ascertain the identities of the John Doe Defendants and to provide this information to Plaintiff. (*Id.* at 2–3.) Finally, I denied Plaintiff's motion for pro bono counsel without prejudice. (*Id.* at 3.)

Dino Diaz, Rivas Sears, and Valerie Soto, through their shared counsel, filed individual Answers to the Amended Complaint on January 30, 2019. (Docs. 39–41.) On February 15, 2019, NYPH filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), along with a declaration and memorandum of law in support. (Docs. 51–55.) On February 25, 2019, the GSH Defendants filed their motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6), along with a declaration and memorandum of law in support. (Docs. 60–63.) On April 4, 2019, Defendants Soto, Sears, and Diaz filed a motion to dismiss, but this was terminated by the Clerk as a deficient docket entry.

On April 18, 2019, Plaintiff filed a memorandum of law in opposition to the motions to dismiss of NYPH and the GSH Defendants. (Doc. 73.) The GSH Defendants filed their reply on May 1, 2019, (Doc. 76), and NYPH filed its reply memorandum on May 2, 2019, (Doc. 78). On May 6, 2019, in a letter requesting an extension of time to oppose the motion of Soto, Sears, and Diaz, Plaintiff requested that I issue a summons to Self Help Community Services. (Doc 81.)

Construing Plaintiff's Amended Complaint liberally, I issued an Order of Service on May 14, 2019 directing the Clerk of Court to provide to the United States Marshals Service all documents necessary to effect service on Self Help Community Services.  (Doc. 84.)

Defendants City of New York and Angel Bussue ("City Defendants") filed their Answer on May 13, 2019.  (Doc. 82.)

On May 24, 2019, Defendants Soto, Sears, and Diaz filed a declaration and memorandum of law in support of their motion to dismiss pursuant to Rule 12(b)(6).  (Docs. 86–87.)  They did not refile the motion itself.  On June 6, 2019, Plaintiff filed a letter opposing the motion of Soto, Sears, and Diaz, (Doc. 91), and they filed their reply on June 12, 2019, (Doc. 92).

On June 17, 2019, Self Help Community Services ("Self Help") filed a motion to dismiss the Amended Complaint, accompanied by a declaration and memorandum of law.  (Docs. 95–97.)  Plaintiff filed his opposition on July 17, 2019, (Doc. 99), and Self Help filed a reply on July 19, 2019, (Doc. 100).

### III.  <u>Legal Standards</u>

#### A.  *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements,

and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). The court may consider the complaint, documents attached to the complaint or incorporated by reference, or matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## B.    *Rule 12(c)*

A motion to dismiss based on a non-waivable defense "that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (footnote omitted). In deciding a motion for judgment on the pleadings, a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). This means "[a]ccepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party," and granting judgment on the pleadings "if the

moving party is entitled to judgment as a matter of law." *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999) (internal quotation marks omitted).

Under Rule 12(c), a party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted); *see Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (noting that judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings"); 5C Charles Alan Wright et al., Fed. Prac. & Proc. § 1368, at 251 (3d ed. 2004) (noting that "plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery"). "On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

### C.     *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). "In keeping with these precepts, although Rule 12(b)(6) generally restricts a court's consideration to the four corners of the complaint, *pro se* pleadings may be read together to determine whether a plaintiff conceivably could be entitled to relief." *Sathianathan v. Smith*

*Barney, Inc.*, No. 04 Civ. 7122(DAB)(FM), 2006 WL 538152, at *13 (S.D.N.Y. Feb. 24, 2006) (collecting cases); *see also Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11-CV-8876 (CS), 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016) ("[A] court is permitted to consider factual allegations in pro se plaintiffs' preceding complaints in order to supplement those in amended complaints."); *Sommersett v. City of New York*, No. 09 Civ. 5916(LTS)(KNF), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." (citation omitted)).

Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV.     Discussion

I first address three procedural matters. First, because of Plaintiff's pro se status, I consider all of his submissions, not just the Amended Complaint, in determining whether he has stated a claim. *See Voltaire*, 2016 WL 4540837, at *3; *Sommersett*, 2011 WL 2565301, at *3. Second, because Defendants Diaz, Soto, and Sears have all filed answers, (*see* Docs. 39–41), I must treat their motion to dismiss pursuant to Rule 12(b)(6) as a motion for judgment on the pleadings pursuant to Rule 12(c). *Patel*, 259 F.3d at 126. Third, reading all of Plaintiff's submissions in the most favorable light possible, I construe them as attempting to assert the following federal law claims: § 1983 claims against the NYPH, GSH, and Kostopoulos for violations of his substantive due process rights under the Fourteenth Amendment; and § 1983

claims against the City of New York, Bussue, Self Help, Soto, Sears, and Diaz for (1) violations of his Fourth Amendment right to be free from unreasonable search and seizure, and (2) retaliation against protected speech in violation of the First Amendment. He also asserts the following state common law claims against certain combinations of Defendants: false arrest/imprisonment, intentional and negligent infliction of emotional distress, medical malpractice, battery, assault, defamation, and negligence.

NYPH, the GSH Defendants, and the Self Help Defendants ("Moving Defendants") all move to dismiss Plaintiff's § 1983 claims on the grounds that they are not state actors and cannot be held liable under § 1983. Defendants further argue that I should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, or, in the alternative, they should be dismissed for failure to state a claim. I address these arguments in turn.

## A. *Plaintiff's § 1983 Claims*

### 1. Applicable Law

"Section 1983 provides a civil claim for damages against any person who, [1] acting under color of state law, [2] deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In other words, section 1983 does not establish substantive rights, but it provides a means of redress for the deprivation of rights established elsewhere. *Id.*

Because the United States Constitution regulates only the government, "to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). In the context of § 1983, a "private entity acts under color of state law . . . when (1) the State compelled the conduct (the 'compulsion test'), (2) there is a sufficiently close nexus

between the State and the private conduct (the 'close nexus test' or 'joint action test'), or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State (the 'public function test')." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citation omitted). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

In addition, a private corporation, because it is not a person, cannot be held liable under § 1983 for constitutional torts committed by its employees, unless the plaintiff proves that the tort was committed pursuant to an official policy of the employer. *See Green v. City of New York*, 465 F.3d 65, 82 (2d Cir. 2006); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409–10 (2d Cir. 1990) (observing that the theory by which municipalities may be held liable under § 1983, established in *Monell v. Dep't of Social Serv.,* 436 U.S. 658, 691 (1978), has been extended to private businesses). In the context of municipal liability, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 204 (S.D.N.Y. 2013) (citation omitted).

## 2. Application

### a. Section 1983 Due Process Claim Against NYPH, GSH, and Kostopoulos

Plaintiff concedes that he has not alleged facts to show that Kostopoulos was a state actor under Section 1983 and that he has not alleged "facts sufficient for corporate liability" against NYPH or GSH.  (Pl.'s Opp. Hosps. 9–10.)[6]  I interpret these statements as a concession that Plaintiff has not alleged sufficient facts to allege that, to the extent employees of the NYPH or GSH committed a constitutional tort, they did not do so pursuant to an "official policy" of NYPH or GSH.[7]  *Cf. Green v. City of New York*, 465 F.3d at 82.

Accordingly, Plaintiff's § 1983 claims against NYPH, GSH, and Kostopoulous are dismissed.

### b. Section 1983 Claims Against Self Help, Soto, Sears, and Diaz

The Self Help Defendants argue that they cannot be held liable for any § 1983 violations because they are not state actors and did not engage in joint state action.  (Self Help Mem. 8–10; SH Ind. Defs. Mem. 7–9.)  Self Help also argues that it cannot be held vicariously liable for any constitutional torts committed by Soto, Sears, and Diaz because Plaintiff has not alleged that

---

[6] "Pl.'s Opp. Hosps." refers to Plaintiff's Memorandum of Law in Opposition to the New York and Presbyterian Hospital and New York Gracie Square Hospital Defendants' Motion to Dismiss, filed April 18, 2019.  (Doc. 73.)  This brief consists of a typewritten document with internal page numbers, followed by a handwritten document with internal page numbers that start over from 1.  Therefore, to avoid confusion, I refer to the ECF page numbers in any citations to this document.

[7] In any event, it is well settled in the Second Circuit that "forcible medication and hospitalization [of a plaintiff] by private health care providers," without more, generally does not constitute state action under the compulsion, close nexus, or public function tests, even when the plaintiff was transported to a hospital by municipal police officers.  *McGugan*, 752 F.3d at 229 (stating that the court could not "discern any other reason why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors"); *see also Amid v. Chase*, 720 F. App'x 6, 11 (2d Cir. 2017); *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009).  Therefore, even if Plaintiff had sufficiently alleged that employees of Defendants NYPH and/or GSH acted pursuant to an official policy, Plaintiff's § 1983 claims against the Hospital Defendants would be subject to dismissal to the extent that they are based solely on allegations of "forcible medication and hospitalization."

such torts were committed pursuant to an official policy of Self Help.  (Self Help. Mem. 9–10.)  The Self Help Defendants do not argue, however, that Plaintiff has failed to properly allege an underlying constitutional tort.

As an initial matter, Self Help's argument that it cannot be a state actor on the basis of res judicata and collateral estoppel is wholly unpersuasive.  Self Help relies on the facts that Judge McMahon's Order to Amend (1) found Plaintiff's original complaint against Self Help insufficient in part because Self Help is a private actor, and (2) noted that Plaintiff had previously sued Self Help under § 1983 and that his complaint was dismissed for lack of subject matter jurisdiction.  (Self Help Mem. 7–8 (citing Ord. to Am. 5, *id.* n.5).)[8]  But the Order to Amend did not dismiss Plaintiff's action with prejudice, result in a final judgment or find as a matter of law that Self Help had not engaged in state action, but rather that "Plaintiff has not provided facts suggesting that [it] acted under color of state law for purposes of liability under § 1983."  (Ord. to Am. 5.)  Judge McMahon's conclusion is therefore not binding on my analysis of the facts alleged in Plaintiff's Amended Complaint.  In addition, as the Second Circuit has instructed, "[i]n analyzing whether a private entity acts under color of state law for purposes of § 1983, [the court] begins by identifying the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity."  *Fabrikant*, 691 F.3d at 207 (internal quotation marks omitted).  Therefore, to the extent that Plaintiff's 2010 complaint against Self Help was dismissed for failure to allege state action—and it may not have been—that dismissal would not be binding on my decision here, which is based on entirely different alleged conduct.

Accordingly, I turn next to the specific alleged conduct to determine whether Plaintiff has

---

[8] "Ord. to Am." refers to the Order to Amend issued by Chief Judge Colleen McMahon in this case on August 3, 2018.  (Doc. 4.)

plausibly alleged that any of the Self Help Defendants were acting in concert with the state, and if so, whether such actions were in furtherance of an official policy of Self Help. In order to identify the relevant conduct, I briefly survey the substantive law surrounding § 1983 claims for violations of Fourth and First amendment rights. However, since the Self Help Defendants do not argue that Plaintiff's constitutional rights were not violated—only that they cannot be held liable for any such violation—my survey of this law is not intended to be, and should not be interpreted as, a dispositive analysis of whether the conduct alleged in fact "deprived [Plaintiff] of a right, privilege or immunity secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted).

i.     *Fourth Amendment*

The Fourth Amendment protects individuals and their homes against unreasonable searches and seizures. U.S. Const. amend. IV. To be reasonable, a search must be made pursuant to a warrant or to an exception to the warrant requirement, such as when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460, (2011) (internal quotation marks omitted). One such exigency is the "emergency aid exception," which allows "officers [to] enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* (quoting *Brigham City v. Stuart,* 547 U.S. 398, 403 (2006)). Whether the emergency aid exception applies is a "purely objective" inquiry that is based on the "totality of the circumstances confronting law enforcement agents in the particular case'; the core inquiry is 'whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action.'" *Id.* (quoting *United States v.*

*Simmons*, 661 F.3d 151, 157 (2d Cir. 2011)).  In addition, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 290 (S.D.N.Y. 2015) (quoting *United States v. Ramirez,* 523 U.S. 65, 71 (1998)).

Within the meaning of the Fourth Amendment, a seizure "occurs . . . when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (internal quotation marks omitted). "[I]n order to constitutionally seize a person to transport him to a hospital, the person must be dangerous, presumably to himself or others." *Green v. City of New York*, 465 F.3d at 83.

"[M]erely supplying information to a police officer does not make the supplier of information a state actor." *Luciano v. City of New York*, No. 09 CIV. 00359 (DC), 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009).  "Where, on the other hand, a private citizen has done more than simply call police and provide sworn information, a claim of state action may be sustained." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012). In particular, allegations of "concerted action" may show "willful collaboration" sufficient to state a claim against a private employee for Fourth Amendment violations committed by a police officer.  *See id.* (citing *Bacquie v. City of New York,* No. 99 Civ. 10951(JSM), 2000 WL 1051904 at *2 (S.D.N.Y. July 31, 2000)).

With regard to Plaintiff's allegations about Soto—principally that she called him a "fat faggot" and mistreated him when he was trying to pick up his HRA check, (Am. Compl. ¶ 6)—I find that they are insufficient to suggest that Soto was engaged in joint state action.

However, construing the amended complaint liberally, Plaintiff has alleged numerous facts that suggest that Sears and Diaz were engaged in joint action with state actors that caused a

deprivation of his Fourth Amendment rights. First, I find that Plaintiff has alleged a deprivation of his rights to be free of search and seizure. Specifically, Plaintiff claims that on June 21, 2018, he was at home "not threatening anyone, physically attacking anyone, or causing any disturbance of any kind," (Am Compl. ¶¶ 10), when around 10 a.m. police officers banged on his door and rushed in when he opened it slightly, even though they did not have a warrant or exigent circumstances, (*Id.* ¶ 11). Subsequently, the police searched one of Plaintiff's drawers without permission, confined him to an ambulance, and took him to NYPH against his will. (*Id.* ¶¶ 14–15.) On the face of the Complaint, therefore, Plaintiff's allegations do not suggest any exception to the warrant requirement that would have justified the police entry in his home, nor any facts to suggest that he was a danger to himself or others.

On August 3, 2018, Plaintiff alleges, he called the police for assistance after Diaz came to his apartment. (*Id.* ¶¶ 28–29.) When they arrived, they banged on his door, and Plaintiff opened the door slightly; the officers then rushed in without permission along with Diaz and other Self Help workers. (*Id.* ¶¶ 27–32). Plaintiff maintains that he "was not threatening anyone, physically attacking anyone, or causing any disturbance of any kind," and the police had no warrant or exigent circumstances to justify their entry. (*Id.* ¶¶ 27, 29.) Although Plaintiff alleges that Diaz falsely told the police that plaintiff had attempted to use a knife on him, he alleges that Diaz said this "when the police officers were entering the apartment," not before. (*Id.* ¶¶ 29–32.) Finally, Plaintiff alleges that when he returned home from GSH after his ten-day hospitalization, "his apartment was messy, there was considerable damage, and [] items [were] missing." (*Id.* ¶ 46.)

Although discovery may ultimately reveal that the events transpired differently, these facts adequately plead that there was no exigency during both the June 2018 and August 2018

incidents, because that there was no evidence to show that Plaintiff was dangerous to himself or others to justify the warrantless entry, *see Green v. City of New York*, 465 F.3d at 83; and that even if their search of his home were justified, the "police acted unreasonably or maliciously in bringing about the damage" they caused, *see Green v. City of Mount Vernon*, 96 F. Supp. at 290. Plaintiff's allegations—taken as true, as I must at this stage of the litigation— that he did not, in fact, have a knife, that Diaz was not currently being threatened with a knife, and that Diaz told the police that Plaintiff had a knife at the same time as they were entering the apartment, when they had the independent ability to assess whether Plaintiff had a knife, defeats any argument that, as a matter of law, a reasonable officer would have "believe[d] there was an urgent need to render aid or take action." *Chamberlain*, 986 F. Supp. 2d at 381. I also find it relevant that Plaintiff alleges that he willingly opened the door for the police, which would obviate the need for a physical entry of his apartment, and that even after the police were able to make a full physical inspection of his person, which would arguably be sufficient to neutralize the alleged exigency, they then went on to search the rest of his apartment and unnecessarily damaged his belongings. *Cf. Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 474 (E.D.N.Y. 2016) (granting motion to dismiss Fourth Amendment claim based on warrantless entry because the officer's "search was strictly circumscribed by the exigencies that justified its initiation;" circumstances suggested a burglary might be in progress; officer arrested two males who were in the house who could not provide conclusive proof that they lived there; and once owner of the house appeared and informed him that one of the males was, in fact, her son, officer released the son and departed); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 382 (S.D.N.Y. 2013) (granting motion to dismiss Fourth Amendment claim based on emergency aid exception where first responders had received call from medical alert service who stated his device had

transmitted an alert; when they arrived at plaintiff's home, he refused them entry and officers could hear him "speaking as if to another person").

In addition, Plaintiff has alleged sufficient facts to suggest that Diaz and Sears engaged in "willful collaboration with [] official state actor[s]"—namely, New York City police officers and employees of HRA—in effecting a deprivation of Plaintiff's Fourth Amendment rights. *See Stewart*, 851 F. Supp. 2d at 446 (internal quotation marks omitted). Specifically, in addition to alleging that Diaz falsely told the police Plaintiff had a knife and that Diaz and Self Help employees entered his apartment along with the police during the August incident, Plaintiff further alleges: that Defendant Bussue, an HRA employee, told him to stop making 311 complaints or else the police would be called, (Am. Compl. ¶¶ 6–8); that "HRA sent [an] email to Self Help they called police on me," (Compl. 6); that Sears sent Diaz to his apartment "because of the various complaints Plaintiff made with 311 regarding" Self Help workers, (Am. Compl. ¶ 25), that after that incident Sears told him "you report people that's what you get," (Compl. 7) and "it was HRA['s] fault," (Pl.'s Opp. Diaz 2)[9]; and that after the June incident Bussue told him "you report 311 and this will happen again," (*id.* 7). He further alleges that in August 2018, Diaz and other Self Help workers entered his apartment without his consent when the police rushed in. (Am. Compl. ¶¶ 29–30.) These facts and the logical inferences from these facts, plausibly allege that Sears and Diaz were acting in concert with HRA and the NYPD, two municipal agencies, and "shared a common unlawful goal" of harassing Plaintiff to pressure him into ceasing his complaints about Self Help and HRA. *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996); *compare Bacquie*, 2000 WL 1051904, at *2 (plaintiff stated a claim where a

---

[9] "Pl.'s Opp. Diaz" refers to Plaintiff letter in opposition to Diaz, Soto, and Sears' motion to dismiss, filed June 6, 2019. (Doc. 91.)

hotel had reported plaintiff for trespassing; police consulted with hotel employees and "then ordered the plaintiffs to sign . . . a hotel form whereby they agreed never to enter the hotel again," which gave rise "to an inference that the officers and hotel security were acting in concert"), *with Mejía v. Robinson*, No. 1:16-CV-9706-GHW, 2018 WL 3821625, at *6 (S.D.N.Y. Aug. 10, 2018) (dismissing similar Fourth Amendment claim against an NYPH hospital mobile crisis team who called the police to transport the plaintiff to the hospital, where the team left the apartment before the police arrived, did not otherwise work jointly with the police, and plaintiff did not allege that "the mobile crisis team's decision to contact the police was made jointly with the NYPD or any other state actor").

However, I find that Plaintiff has not alleged facts to suggest that Self Help may be held liable for the alleged constitutional violations of Diaz and Sears. Although Plaintiff alleges that Sears was a supervisor (Am. Compl. ¶ 9), and that there were two incidents of constitutional violations, these facts do not rise to the level of establishing any of the elements that may show corporate liability: (1) a "formal policy"; (2) actions or decisions made by a supervisor "responsible for establishing [Self Help] policies"; (3) "a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials"; or (4) a failure by official policy-makers to properly train or supervise subordinates" such that it amounts to deliberate indifference" to the rights of clients. *K.D. ex rel. Duncan*, 921 F. Supp. 2d at 204 (discussing municipal liability).

Accordingly, I find that Plaintiff has stated a § 1983 claim for violations of his Fourth Amendment rights against Diaz and Sears, but not against Soto or Self Help.

ii.    *First Amendment Retaliation*

For a plaintiff to prevail on a free speech retaliation claim, he must prove that he "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). A plaintiff must show that a defendant's actions "had some *actual*, non-speculative chilling effect on his speech." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (internal citations omitted) (emphasis added).

Plaintiff appears to be alleging that the Self Help Defendants and HRA together called the police on him in retaliation for his numerous 311 complaints, which overlaps with the allegations supporting his Fourth Amendment Claim. However, Plaintiff has alleged no facts to suggest that the speech in question—*i.e.*, his freedom to make 311 complaints against HRA and Self Help—was a protected interest or that it was ultimately actually chilled as a result of Defendants' actions. Indeed, even after the June 21 incident, which Plaintiff believes was instigated by Self Help and HRA in retaliation for his 311 calls, he still made at least one more 311 call to complain about Sears and Diaz. (*See* Am. Compl. ¶ 24.) Therefore, this claim must fail.[10]

**B.    *Supplemental Jurisdiction***

In his Amended Complaint, Plaintiff purports to assert "pendent state claims" against Defendants. (Am. Compl. 2.) Then, in his various opposition briefs, he clarifies that these claims are false arrest/imprisonment against NYPH, GSH, Diaz, Sears, and Self Help; intentional

---

[10] Although Defendants did not raise this argument, because Plaintiff brings this action in forma pauperis I may at any time sua sponte dismiss a cause of action for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e).

infliction of emotional distress against NYPH, GSH, Diaz, and Self Help; negligent inflection of emotional distress against NYPH and GSH; medical malpractice against NYPH, GSH, and Kostopoulos; battery against NYPH, GSH, and Kostopoulos; assault against GSH; defamation against Diaz, Sears, and Self Help; and negligence against Diaz, Sears, Soto, and Self Help. (*See* Pl.'s Opp. Hosps. 6–9; Pl.'s Opp. Diaz 4–5 (specifying claims against Diaz, Sears, and Soto); Pl.'s Opp. SH 3 (stating that Self Help's motion should be denied "for the same reasons outlined in my June 6, 2019 opposition and the doctrine of respondeat superior).)[11]

Because I have dismissed the federal claims against NYPH, GSH, Kostopoulos, Soto, and Self Help, my jurisdiction over the above-listed New York state law claims against them would be supplemental. "Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (internal quotations omitted). "A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact." *Id.* (internal quotation marks omitted). "This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Id.* (citing 28 U.S.C. § 1367(a) (2000); *Kirschner v. Klemons,* 225 F.3d 227, 239 (2d Cir. 2000). "[I]n other words, [the state and federal claims] must be such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (internal quotation marks omitted). "To make this determination, courts 'have traditionally asked whether the facts

---

[11] "Pl.'s Opp. SH" refers to Plaintiff's Declaration in Opposition to Self Help's Motion to Dismiss, filed on July 17, 2019. (Doc. 99.)

underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" *LaChapelle v. Torres*, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014) (quoting *Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006).)

All Defendants argue that because I should dismiss the federal claims against them, I should also exercise my discretion under 28 U.S.C. § 1367(c) to decline supplemental jurisdiction and dismiss the state law claims against them. However, because federal claims survive against Sears and Diaz, it is clear that any state law claims Plaintiff asserts against Self Help and Soto, which arise out of the same "nucleus of operative fact," are "properly subject to [this] [c]ourt's supplemental jurisdiction." *Montefiore*, 642 F.3d at 333. I also find it appropriate to retain jurisdiction over Plaintiff's claims against NYPH, GSH, and Kostopoulos, as the events giving rise to the claims against them arise out of the same continuous chain of events. *See Mejía v. Davis*, 1:16-cv-9706-GHW, 2018 WL 333829, at *7 (S.D.N.Y. Jan. 8 2018) ("The Second Circuit has made clear that a district court may not decline to exercise jurisdiction over state law claims where federal claims remain against other defendants and the state law claims 'form part of the same case or controversy.'" (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)).

Both NYPH and the GSH Defendants assert that the claims against them arise out of events that took place after the police officers had left the hospital and therefore after the involvement of the City had terminated. (NYPH Mem. 8; GSH Mem. 10; GSH Reply 3–4).[12] I

---

[12] "NYPH Mem." refers to the Memorandum of Law in Support of the Pre-Answer Motion to Dismiss by Defendant the New York and Presbyterian Hospital, s/h/a New York Presbyterian Hospital, filed February 15, 2019. (Doc. 53.) "GSH Mem." refers to the Gracie Square Defendants' Memorandum of Law in Support of Motion to Dismiss filed Februay 25, 2019. (Doc. 62.) "GSH Reply" refers to the Gracie Square Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss, filed May 1, 2019. (Doc. 76.)

find this argument unpersuasive because it ignores the continuous chain of events as it relates to the removal of Plaintiff from his home and his subsequent treatment. Plaintiff's claims against the Hospital Defendants, the Self Help Defendants and the City Defendants are all linked to Plaintiff's mental state when the police entered his home and transported him to the hospital against his will. The testimony of the hospital staff who admitted and treated him is likely to be relevant to the § 1983 claims that remain before me. Therefore, I find that the "presentation of the federal claim necessarily [brings] the facts underlying the state claim before the court." *BLT Rest. Grp. LLC v. Tourondel*, 855 F.Supp.2d 4, 10 (S.D.N.Y. 2012) (internal quotation marks omitted); *cf. Ozawa v. Orsini Design Assocs., Inc.*, No. 13-CV-1282 JPO, 2015 WL 1055902, at *12 (S.D.N.Y. Mar. 11, 2015) (declining supplemental jurisdiction over state law claims in part because there was no reason to believe the evidence would overlap). In addition, although as the GSH Defendants point out, some courts "have held that there is no common nucleus of operative fact where the events underlying the federal claims occur at a different time than the events underlying the state law claims," *LaChapelle*, 37 F. Supp. 3d at 682, concluding that the events underlying Plaintiff's claims against the Hospital Defendants occurred at a different time than the events underlying his claims against the Self Help Defendants and the City would create an artificial temporal division that cannot be justified under the circumstances presented here. Rather, during each incident, the events flowed continuously into one another over the course of a fairly short period of time. The cases cited by NYPH, (*see* NYPH Reply 3), and the GSH Defendants, (GSH Reply 3–4), on this point concern distinct differences in timing and/or substance, and are therefore inapposite. *See, e.g., Rosa v. Triborough Bridge & Tunnel Auth.*, No. 18-CV-1384 (BMC), 2018 WL 6002903, at *4 (E.D.N.Y. Nov. 15, 2018) (dismissing state law claims against transit agency relating to their transport of plaintiff to hospital, on the basis

that they raised "different legal issues" than remaining federal claims against municipality, which concerned plaintiff's death in a cell at the police precinct, where she had been taken after being discharged from hospital); *LaChapelle*, 37 F. Supp. 3d at 682 (no overlap of evidence between loans extended in 2011 and trademark infringement in 2012); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 394 (E.D.N.Y. 2007) (state law claims relating sexual harassment occurred nearly a year after the end of the alleged overtime violations giving rise to her federal Fair Labor Standards Act claim).

### C.    *State Law Claims*

Defendants move to dismiss Plaintiff's claims of "false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, medical malpractice, battery, or assault" on the ground that Plaintiff merely recites the elements of each cause of action and therefore fails to state a claim.  (GSH Reply 5; Self Help Reply 6; Diaz Reply 5.)[13] The NYPH Defendants move only to dismiss the infliction of emotional distress claims as duplicative, and the battery claim for failure to state a claim.  (NYPH Reply 5–9.)  Diaz, Soto, Sears, and Self Help also move to dismiss Plaintiff's claims for false imprisonment, intentional or negligent infliction of emotional distress, medical malpractice, battery or assault for failure to state a claim and on the basis that it was impermissible for Plaintiff to have raised new cause of action in his opposition papers.  (Self Help Reply 6; Diaz Reply 5.)

As an initial matter, I must construe Plaintiff's submissions liberally, *Boykin*, 521 F.3d at 214, and interpret them to raise "the strongest arguments that they suggest."  *Kevilly*, 410 F. App'x at 374.  In keeping with that responsibility, it is proper for me to consider Plaintiff's

---

[13] "Self Help Reply" refers to the Memorandum of Law in Reply to Plaintiff's Opposition and in Further Support of Defendant Selfhelp Community Service, Inc.s' [sic] Pre-Answer Motion to Dismiss, filed July 19, 2019.  (Doc. 100.)  "Diaz Reply" refers to the Memorandum of Law in Reply to Plaintiff's Opposition and in Further Support of Defendants' Motion to Dismiss," filed by Diaz, Soto, and Sears on June 12, 2019.  (Doc. 92.)

newly asserted state law claims because they "could have been asserted based on the facts alleged in the complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (internal quotation marks omitted) (collecting cases). I also look past Plaintiff's conclusory statements to the substance of his pleadings as a whole in order to determine whether he has alleged sufficient facts to support his claims.

Further, I note that Plaintiff did not assert assault, battery, or negligent infliction of emotional distress against any of the Self Help Defendants, and that the Self Help Defendants did not argue for dismissal of certain of the additional torts he explicitly alleged against them, namely defamation and negligence. Accordingly, those claims survive.

### 1. False Arrest and False Imprisonment Against NYPH, the GSH Defendants, and the Self Help Defendants.

"'The common law tort of false arrest is a species of false imprisonment,' and under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Garcia v. Cty. of Westchester,* No. 11-CV-7258 (KMK), 2017 WL 6375791, at *14 (S.D.N.Y. Dec. 12, 2017) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). Where a private defendant "allegedly provides incorrect or incomplete information to law enforcement, a successful false arrest claim requires allegations that the private defendant affirmatively induced or importuned the officer to arrest" the plaintiff. *Delince v. City of New York*, No. 10 CIV. 4323 PKC, 2011 WL 666347, at *4 (S.D.N.Y. Feb. 7, 2011) (internal quotation marks omitted). In addition, "in an action for damages for false imprisonment, the burden of establishing that the detention was privileged is on those charged with the commission of that tort." *Ferris v. Millman*, 847 N.Y.S.2d 373, 376 (Sup. Ct. 2007) (quoting *Hollender v. Trump Village*

*Co-op.*, 461 N.Y.S.2d 765, 448 (1983).)

### a. The GSH Defendants

New York's Mental Health Law permits and sets forth detailed procedures for the involuntary confinement of patients with mental illness "for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others." N.Y. Mental Health. L. § 9.39. "[B]ecause a determination pursuant to Mental Hygiene Law [A]rticle 9 requires a medical judgment by a treating physician, the determination to retain a patient is privileged only in the absence of negligence, or malpractice, in the exercise of that medical judgment." *Ferris v. Millman*, 847 N.Y.S.2d 373, 377 (Sup. Ct. 2007) (quoting *Morgan v. City of New York,* 822 N.Y.S.2d 567, 568 (2d Dep't 2006).

Here, Plaintiff has sufficiently alleged that Kostopoulos, the treating physician, and GSH, the treating hospital, intended to confine him against his will, that he was conscious of that confinement, and that he did not consent. (*See* Am. Compl. ¶¶ 33–43.) He has also alleged that he did not injure or threaten to injure himself or any other person, and that he repeatedly told hospital personnel that he did not want to hurt himself. (*Id.*) At this stage of the proceedings, because the burden to show that Plaintiff's confinement was privileged rests with Kostopoulos and GSH, Plaintiff's allegations are sufficient to state a claim against them. The false arrest and imprisonment claim also survives at this time against NYPH, which did not move to dismiss it.

### b. Self Help Defendants

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim or false arrest under New York law." *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 448 (S.D.N.Y. 2018) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528 U.S. 946 (1999),

*reconsideration denied*, No. 14 CIV. 7424 (PAE), 2018 WL 3455406 (S.D.N.Y. July 18, 2018).

Therefore, for the reasons discussed *supra* Part IV.A.2.b.i, Plaintiff has stated a claim for

common law false arrest against Soto and Diaz.  In particular, Plaintiff has alleged that in both

June and August 2018, Soto and Diaz "affirmatively induced or importuned the [NYPD]

officers" to confine Plaintiff to an ambulance," *see Delince*, 2011 WL 666347, at *4, fulfilling

the intent element, and that Plaintiff was conscious of being confined and did not consent to it,

*see Garcia*, 2017 WL 6375791, at *14.  (*See* Am. Compl. ¶¶ 15–16, 31.)  However, as to Self

Help, the doctrine of respondeat superior is different from vicarious liability under section §

1983.  *Cf. Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 502 (N.D.N.Y. 2017); *see also*

Bektic–Marrero v. Goldberg, 850 F. Supp. 2d 418, 434 (S.D.N.Y. 2012) ("The doctrine of

respondeat superior renders a master vicariously liable for a tort committed by his servant while

acting within the scope of his employment.").  Self Help has not addressed Plaintiff's contention

that it should be vicariously liable for the common law torts of Soto and Diaz, and so the false

arrest claim against it survives.  (*See* Self Help Reply 5.)

### 2.  Medical Malpractice against Kostopoulous, GSH, and NYPH

To survive a motion to dismiss on a medical malpractice claim under New York law, a

plaintiff must allege the defendant's "deviation from accepted medical practice" and "a causal

nexus between the deviation and the harm suffered by the plaintiff."  *Jones v. Beth Israel Hosp.*,

No. 1:17-CV-3445-GHW, 2018 WL 1779344, at *9 (S.D.N.Y. Apr. 12, 2018) (internal

quotations omitted); *see also Koulkina v. City of New York*, 559 F. Supp. 2d 300, 325 (S.D.N.Y.

2008).  "[U]nder New York law, hospitals are vicariously liable for the physicians who provide

care to their emergency room patients provided that a patient has not entered the hospital in order

to receive treatment from a specific physician."  *See Lorenz v. Managing Dir., St. Luke's Hosp.*,

No. 09 CIV. 8898 DAB JCF, 2010 WL 4922267, at *11 (S.D.N.Y. Nov. 5, 2010), *report and recommendation adopted*, No. 09 CIV. 8898 DAB, 2010 WL 4922541 (S.D.N.Y. Dec. 2, 2010) (citing *Schiavone v. Victory Mem'l Hosp.,* 738 N.Y.S.2d 87, 89 (2d Dep't 2002)).

Here, Plaintiff has alleged that Kostopoulous admitted him to GSH against his will even though when she "asked [Plaintiff] if he wanted to hurt himself, and [he] stated no" and even though neither she nor any other hospital staff "perform[ed] an independent evaluation." (Am Compl. ¶ 36). According to Plaintiff, he was "never an imminent danger to himself or others," (*id.* ¶ 44), and the "entirety of [his] forced hospitalization and forced medication through needles and pills lacked any medical or safety justification." (*Id.* ¶ 45.) He further that he was restrained to a bed, forcibly medicated, allowed to fall, and denied his inhaler while at GSH. *Id.* ¶¶ 33. As a result of this incident and the other events alleged in Plaintiff's pleadings, Plaintiff experienced "pain and suffering." (*Id.* ¶ 6.)

Although Plaintiff does not "expressly allege the applicable standard of care," *Beth Israel Hosp.*, 2018 WL 1779344, at *10, stating only in his opposing brief that GSH's employees "breached the appropriate duty of care," I read his allegations as suggesting that the applicable standard of care required hospital staff to conduct an independent evaluation before hospitalizing Plaintiff against his will, and to only do so if there was a medical or safety justification, and that the hospital did not adhere to this standard. At this stage of the litigation, I find that these allegations "suffice to plausibly plead a deviation from the standard of care," *Jones*, 2018 WL 1779344, at *10 (plaintiff alleged that "he 'should have been medicated' yet 'was not' and that 'by law they were not suppose [sic] to release' him in the condition in which he was upon discharge," and that it was insufficient that hospital directed an individual to speak with plaintiff about his feelings); *see also Lorenz*, 2010 WL 4922267, at *11 (holding that plaintiff adequately

alleged medical malpractice when he alleged that he was a patient at the defendant hospital, that

hospital physicians "made treating decisions that might plausibly be deviations from accepted

medical practice, and that those decisions caused some injuries to him.")

Accordingly, Plaintiff's medical malpractice claim against GSH and Kostopoulos

survives.  NYPH did not move to dismiss this claim, so the medical malpractice claim against it

also survives for the present.[14]

### 3.  Assault and Battery

"Under New York law, 'an "assault" is an intentional placing of another person in fear of

imminent harmful or offensive contact.  A "battery" is an intentional wrongful physical contact

with another person without consent.'" *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 364

(S.D.N.Y. 2017) (quoting *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001)).  "[T]he

common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and

unwanted touching."  *Id.* (quoting *Girden*, 262 F.3d at 203).

#### a.  Battery against NYPH

Plaintiff alleges that NYPH committed battery by strapping him to a bed and forcibly

medicating him.  (Pl.'s Opp. Hosps. 8–9).  He also alleges that he was subjected to an anal cavity

search, (*id.* 8), and that a nurse told him he "needed to take the pills if he wished to be released,"

and that he did so even though he did not want to take the pills.  (Am Compl. 19.)  He does not

allege that the nurse actually made physical contact with his body.  (*Id.*)  On their face, these

allegations appear sufficient to state a claim for battery.

NYPH contends that Plaintiff's allegation about being strapped to a bed should not be

---

[14] However, to eventually survive summary judgment on this claim, Plaintiff "must present expert testimony, and the expert's opinion must demonstrate the requisite nexus between the malpractice allegedly committed and the harm suffered."  *Ongley v. St. Lukes Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 47 (2d Cir. 2018).

credited because it appears in his memorandum of law, which NYPH believes was improperly ghostwritten by an attorney. (NYPH Reply 2, 7.) Some courts have frowned upon attorney ghostwriting of pro se pleadings because this practice "not only affords [the plaintiff] the benefit of this [C]ourt's liberal construction of *pro se* pleadings, but also inappropriately shields [the ghostwriting attorney] from responsibility and accountability for his actions and counsel." *Mejía*, 2018 WL 3821625, at *4. Although it is true that Plaintiff's memorandum of law is typewritten and cites to various legal standards, making it different upon first glance from some of his more free-form handwritten submissions, at this stage, in the absence of any further indications of impropriety or lack of good faith, I will not credit NYPH's claim that Plaintiff's memorandum of law was ghostwritten by an attorney.

NYPH next contends that Plaintiff's allegation that he was subjected to an anal cavity search fails because it also forms the basis of his medical malpractice claim. Therefore, in conducting any search, NYPH's intent was to render medical treatment, and so any allegation of "wrongful" intent is "not plausible on its face." (NYPH Reply 8.) This argument would require me to (1) draw an inference in favor of NYPH, rather than Plaintiff, and (2) ignore the basic concept of alternative pleading. I decline to do so.

Accordingly, Plaintiff's battery claim against NYPH survives.

### b. Assault and Battery Against GSH and Kostopoulos

Plaintiff alleges that GSH and Kostopoulos committed battery by strapping him to a bed, ordering that he be medicated, and telling Plaintiff that if he did not take his medication, they would force him to do so. (Am. Compl. ¶ 36, 38; Pl.'s Opp. Hosps. 9.) He alleges that as a result a nurse forcibly injected him with Risperdal, (Am. Compl. ¶ 36), that a nurse told him that "if he did not take the pills, she would report it to her supervisor [who] would send the . . .

33

[n]urses to return and physically force" Plaintiff to take the pills, (*id.* ¶ 38), and that a nurse would use his hands to check Plaintiff's mouth and make sure he had swallowed the pills, (*id.* ¶ 39). He alleges that GSH committed assault by threatening Plaintiff with force if he did not take his medication. (Pl.'s Opp. Hosps. 9.)

These allegations are sufficient to show that GSH employees and Kostopolous, in the course of their employment, committed multiple instances of "intentional wrongful physical contact" with Plaintiff without his consent and "an intentional placing of [him] in fear" of such a contact. *D.K. by L.K.*, 260 F. Supp. 3d. at 364; *Eckardt v. City of White Plains*, 930 N.Y.S.2d 22, 25 (2011) ("[A]n employer will be held liable for torts committed by an employee who is acting within the scope of his or her employment under a theory of respondeat superior"). He has also alleged that Kostopolous, in ordering that he be medicated, would be vicariously liable for the battery.

Accordingly, Plaintiff's claims of battery against Kostopoulos and GSH and his claim of assault against GSH survive.

### 4. Intentional and Negligent Infliction of Emotional Distress

Intentional and negligent infliction of emotional distress are torts that "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256–57 (2d Cir. 2015) (internal citations and quotation marks omitted). As a result, all four New York State Appellate Division courts have held that such claims may never be brought when the challenged conduct falls well within the ambit of other traditional tort liability. *See id.* (affirming dismissal of intentional infliction of emotional distress claim where underlying conduct was actionable as battery); *Berrio v. City of New York*, 15-cv-09570 (ALC), 2017 WL 118024, at *7 (S.D.N.Y. Jan. 10, 2017) (dismissing

negligent and intentional infliction of emotional distress claims where the underlying conduct was actionable through the traditional tort remedy of false arrest).

Plaintiff has alleged no conduct against NYPH, GSH, Kostopolous, Self Help, or Diaz that does not "fall[] within the ambit of traditional tort law"—namely, false arrest, medical malpractice, assault, and battery. *McKenzie v. City of Mount Vernon*, No. 18 CV 603 (VB), 2018 WL 6831157, at *9 (S.D.N.Y. Dec. 28, 2018).

Accordingly, Plaintiff's negligent infliction of emotional distress and intentional infliction of emotional distress claims are dismissed.

### D.    *Dismissal Without Prejudice*

Claims brought pro se typically are dismissed without prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (unless there is no indication that the pro se plaintiff will be able to assert a valid claim giving rise to subject matter jurisdiction, leave to amend should be given). "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted). I see no reason to deviate from the normal practice in this case. Accordingly, Plaintiff's claims are dismissed without prejudice.

### V.    <u>Conclusion</u>

For the foregoing reasons, the motions of NYPH, the Gracie Square Defendants, Self Help, and Soto, Sears, and Diaz are GRANTED IN PART AND DENIED IN PART. The following claims are dismissed:  Plaintiff's § 1983 claims against NYPH, GSH, and Kostopolous; Plaintiff's § 1983 claims for violations of the Fourth Amendment against Self Help and Soto; Plaintiff's § 1983 claims for violations of the First Amendment claims against Self

Help, Soto, Sears, and Diaz; and Plaintiff's intentional and negligent infliction of emotional distress claims.  Each of the following claims survive, either because the respective Defendant did not move to dismiss it, or because it survives on the merits:  Plaintiff's Fourth Amendment claims against Sears and Diaz; Plaintiff's false arrest/imprisonment claim against GSH, Self Help, Sears, and Diaz; Plaintiff's medical malpractice claim against NYPH, GSH, and Kostopoulos; Plaintiff's battery claims against NYPH, GSH, and Kostopoulos; Plaintiff's assault claim against GSH; Plaintiff's defamation claim against Sears, Diaz, and Self Help; and Plaintiff's negligence claim against Soto, Sears, Diaz, and Self Help; and Plaintiff's various claims against the Doe Defendants, Bussue and the City of New York.

The Clerk of Court is respectfully directed to close the motions pending at Documents 51, 60, and 95.

SO ORDERED.

Dated: March 30, 2020
       New York, New York

Vernon S. Broderick
United States District Judge